## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **TIMOTHY ELKINS, JR.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case No. 3:19-CV-55-MAB** |
| ) | |
| **LEVI QUINN, RONALD VITALE, and** ) | |
| **ROB JEFFREYS,** ) | |
| **Defendants.** ) | |
| ) | |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is before the Court on the motion for summary judgment filed by Defendants Levi Quinn, Ronald Vitale, and Rob Jeffreys[1] (Docs. 122 & 123). For the reasons explained below, Defendants' request for summary judgment on Count 2 is granted. The Court defers ruling on Defendants' request for summary judgment on Count 3.

## BACKGROUND

Plaintiff Timothy Elkins, Jr. ("Plaintiff") brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights under the First and Eighth Amendments. Plaintiff alleges Defendant Quinn subjected him to harassment that constitutes cruel and unusual punishment under the Eighth Amendment. Plaintiff claims

---

[1] Defendant Jeffreys is named in this case in his official capacity only to effectuate injunctive relief (Doc. 20).

Defendant Vitale retaliated against Plaintiff for reporting the harassment by transferring Plaintiff to a different correctional facility, in violation of the First Amendment.

Following a threshold review of the Complaint pursuant to 28 U.S.C. § 1915A, Plaintiff was permitted to proceed in this lawsuit on the following claims:[2]

**Count 2:** Eighth Amendment claim against Lieutenant Levi Quinn for harassing Plaintiff during transport from Centralia Correctional Center on August 24, 2018.

**Count 3:** First Amendment retaliation claim against Warden Vitale for transferring Plaintiff out of Southwestern Illinois Correctional Center on October 3, 2018.

(Doc. 20).

On August 26, 2021, Defendants filed a motion for summary judgment on the merits of Plaintiff's claims (Docs. 122 & 123). On August 30, 2021, Plaintiff filed a response to Defendants' motion for summary judgment (Doc. 126).

## UNDISPUTED MATERIAL FACTS

The following material facts are not genuinely disputed. On August 24, 2018, Plaintiff was in custody of the Illinois Department of Corrections ("IDOC") and housed at Centralia Correctional Center ("Centralia") (Doc. 123-1, p. 10:18-11:3). Defendant Levi Quinn is a correctional officer who was employed by IDOC at Centralia at all times relevant to Plaintiff's Complaint (Doc. 127). Defendant Quinn is not a mental health professional (*Id.*).

---

[2] Count I of Plaintiff's Complaint also survived threshold review but was severed into a separate lawsuit. *See Elkins v. Fatheree*, SDIL Case No. 18-2019-GCS.

On August 24, 2018, Defendant Quinn and another non-defendant correctional officer transported Plaintiff on a court writ from Centralia to Macoupin County Courthouse in Carlinville (Doc. 123-2) (Doc. 123-3). Prior to leaving Centralia on the morning of August 24, 2018, a correctional lieutenant told Plaintiff to bend over, to which Defendant Quinn replied, "he's smart, he'll do whatever he's told" and laughed (Doc. 123-1, p. 15:18-25; 16:1-17).[3] During the ride to Carlinville, Defendant Quinn asked Plaintiff if his lawyer was "hot" (*Id.* at p. 23:15-24:9; 53:1-23). Plaintiff told Defendant Quinn his lawyer was a man, to which Defendant Quinn responded that he did not ask him if his lawyer was a man, he asked if his lawyer was hot (*Id.* at p. 23:15-25; 24:1-9; 23:15-25; 24:1-9). Plaintiff responded that he is not gay (*Id.* at p. 47:23-48:5). Defendant Quinn responded that he was not implying Plaintiff is gay (*Id.* at p. 53:1-23). No other individuals in IDOC custody were present in the vehicle during Plaintiff's transfer to the Macoupin County courthouse (Doc. 123-2). Plaintiff told Defendant Quinn the comments were "upsetting" Plaintiff (Doc. 126, p. 3).

After arriving at the Macoupin County courthouse, a woman walked by Defendant Quinn and Defendant Quin told Plaintiff, "I bet her playground's been played on a lot" (Doc. 123-1, p. 28:15-22; 29:10-17). Defendant Quinn commented on another woman's large rear end by stating there must be something in the water making women look like that (*Id.* at p. 28:23-29:9; 30:18-25). No other individuals in IDOC custody were

---

[3] In their motion, Defendants accept as true Plaintiff's allegations that Defendant Quinn actually made the harassing comments to Plaintiff. *See e.g.* Doc. 213, p. 2 ("[E]ven if Defendant Quinn did make certain sexually explicit comments to Plaintiff, such comments do not rise to the level of a constitutional violation."). Thus, for summary judgment purposes, the Court does the same.

present when Defendant Quinn made these comments (*Id.* at p. 29:24-30:7). During Plaintiff's court appearance at Macoupin County, the judge discussed Plaintiff's medications for anxiety and depression (Doc. 126, p. 3). Defendant Quinn was present for the judge's comments (*Id.*).

On the car ride back to Centralia, the vehicle passed a sign that stated, "Bushy Mound" (Doc. 123-1, p. 41:1-5; 42:7-23). Defendant Quinn commented that Bushy Mound referred to a vagina (*Id.*). Defendant Quinn also asked Plaintiff whether he would "let five black guys run a train" on Plaintiff if he would be released from custody (*Id.* at p. 41:6-15; 43:19-44:9; 44:20-25). Also, Defendant Quinn asked Plaintiff if he would jump over the fence at Centralia to escape, if he could (*Id.* at p. 41:10-12). No other individuals in IDOC custody were present in the vehicle during Plaintiff's transfer from the Macoupin County courthouse (Doc. 123-2).

On September 19, 2018, Plaintiff was transferred to Southwestern Illinois Correctional Center ("SWICC") (Doc. 123-7). Defendant Ronald Vitale was the warden of SWICC at all times relevant to Plaintiff's Complaint (Doc. 129). On September 20, 2018, two mental health professionals employed at SWICC completed staff familiarity forms and an incident report about Plaintiff (Doc. 123-8) (Doc. 123-9). The two mental health professionals indicated they had provided treatment to Plaintiff's family members (*Id.*). One of the mental health professionals stated she had provided treatment to Plaintiff's children pertaining to Plaintiff's custody within IDOC and his underlying criminal charges (Doc. 123-8). The mental health professional stated that, as a licensed counselor, she could not have direct contact with clients or their family outside of treatment and that

her knowledge of Plaintiff and the treatment she provided to his children would prohibit her from having any direct contact with Plaintiff (Doc. 123-8) (Doc. 123-9).  The other mental health professional stated she did not believe her former employment or treatment of Plaintiff's children would interfere with her job responsibilities (Doc. 123-8).

On September 25, 2018, Plaintiff's transfer from SWICC was initiated (Doc. 123-10).  Defendant Vitale approved Plaintiff's transfer (Doc. 129) (Doc. 123-10). The stated reason for the transfer was the mental health professionals' familiarity with Plaintiff (Doc. 123-10). Although not a written IDOC policy, if issues arise with staff familiarity, the individual in custody is generally transferred to another facility (Doc. 129).

On September 25, 2018, the same day Plaintiff's transfer was initiated, the Centralia Internal Affairs Unit received a Prison Rape Elimination Act ("PREA") complaint from Plaintiff concerning Defendant Quinn's harassment of Plaintiff (Doc. 123-5).  On September 25, 2018, SWICC Internal Affairs interviewed Plaintiff and Centralia Internal Affairs interviewed Defendant Quinn (*Id.*). Central Internal Affairs interviewed another correctional officer on September 26, 2018 (*Id.*). Centralia Internal Affairs determined Plaintiff's allegations were unsubstantiated (*Id.*). Plaintiff was transferred to Sheridan Correctional Center on October 3, 2018 (Doc. 123-7).

### SUMMARY JUDGMENT STANDARD

Summary judgment is proper when the moving party "shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Factual disputes are genuine only if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the

evidence presented, and they are material only if their resolution might change the suit's outcome under the governing law." *Maniscalco v. Simon*, 712 F.3d 1139, 1143 (7th Cir. 2013) (citation and internal quotation marks omitted). In deciding a motion for summary judgment, the court's role is not to determine the truth of the matter, and the court may not "choose between competing inferences or balance the relative weight of conflicting evidence." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hansen v. Fincantieri Marine Grp., LLC*, 763 F.3d 832, 836 (7th Cir. 2014) (citations omitted); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). Instead, "it must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party." *Hansen*, 763 F.3d at 836.

DISCUSSION

**A.  Eighth Amendment Claim For Cruel And Unusual Punishment (Count 2)**

"The Eighth Amendment prohibits cruel and unusual punishments that involve the unnecessary and wanton infliction of pain." *Lisle v. Welborn*, 933 F.3d 705, 716 (7th Cir. 2019). Verbal harassment that inflicts psychological pain may constitute cruel and unusual punishment, but only in "extreme" and "seldom" circumstances. *Id.* at 719.

"The line between mere harassment and cruel and unusual punishment is fuzzy." *Dobbey v. Illinois Dept. of Corrections*, 574 F.3d 443, 446 (7th Cir. 2009) (internal quotations omitted). "Relationships between prisoners and prison staff are not always marked by genteel language and good manners," *Lisle*, 933 F.3d at 719, and "most verbal harassment by jail or prison guards does not rise to the level of cruel and unusual punishment," *Beal*

*v. Foster*, 803 F.3d 356, 358 (7th Cir. 2015). Although there is no bright line test for determining when harassment becomes a constitutional violation, the Seventh Circuit has provided several examples to guides this Court's analysis.

In *Beal*, the plaintiff was an inmate who alleged a sergeant at a correctional facility repeatedly made sexual comments to the plaintiff, instructed the plaintiff to "place his penis inside [another inmate]," and displayed his penis to the plaintiff while urinating and smiling, all while in the presence of other inmates. 803 F.3d at 358. The other inmates harassed the plaintiff by calling him homophobic slurs, which was "possibly inspired or encouraged" by the defendant's conduct. *Id.* At the motion to dismiss stage, the Seventh Circuit found the plaintiff stated an Eighth Amendment claim because the defendant's comments and actions "could have been understood by the inmates as implying that the plaintiff is a homosexual" and thus "increased the likelihood of sexual assaults on him by other inmates." *Id.* Additionally, the plaintiff alleged he experienced "severe psychological harm" that induced him to seek help from mental health professionals on several occasions. *Id.* at 358-59.

The Court in *Beal* offered additional illustrations of when verbal harassment rises to the level of cruel punishment:

> Suppose a prisoner is having severe headaches and he complains about them to a prison doctor, who writes him a prescription for a powerful drug. A malicious guard learns of this and tells the prisoner the following lie: "the doctor didn't tell you, but he told me: you have incurable brain cancer and will be dead in three months. Now let me tell you what he told me are the symptoms you will be experiencing as your cancer worsens." Or the guard, again lying, tells another prisoner: "I am sorry to have to inform you that your wife and children have been killed in a car crash." The harassment in both cases is purely verbal, yet as cruel (and, one hopes, as unusual) as in

cases of physical brutalization of prisoners by guards. To attempt to draw a categorical distinction between verbal and physical harassment is arbitrary. In short, "the alleged pain [sufficient to constitute cruel punishment] may be physical *or psychological.*" *Watison v. Carter,* 668 F.3d 1108, 1112 (9th Cir.2012) (emphasis added).

*Id.*

As another example, the Seventh Circuit has stated, "Mental torture is not an oxymoron, and has been held or assumed in a number of prisoner cases to be actionable as cruel and unusual punishment — imagine falsely informing a prisoner that he has been sentenced to death." *Dobbey*, 574 F.3d at 445 (internal citations and quotations omitted).

Further, in *Lisle*, the Court found a prisoner's Eighth Amendment claim survived summary judgment, where a nurse assigned to a prisoner on suicide watch allegedly taunted and encouraged the plaintiff to take his own life. 833 F.3d at 705. The nurse told the plaintiff he should have "properly" attempted suicide and should "do a better job next time." *Id.* at 712. The Seventh Circuit noted the defendant "was uniquely situated to aggravate Lisle's condition by using her specialized knowledge to target his psychological vulnerabilities, causing him psychological pain." *Id.* The Court cautioned that it intended its holding to be "narrow" and that the Eighth Amendment will only apply to cases of "extreme" verbal harassment. *Id.* at 719.

The undisputed facts of this case are markedly different from the extreme situations in which courts have found constitutional violations based on harassment. Here, Defendant Quinn commented Plaintiff was "smart" and would "do whatever he's told" when Plaintiff was instructed to bend over. Also, Defendant Quinn asked Plaintiff whether he would have sex with other male inmates to get released from prison, whether

he would jump the prison's fence to escape, and if he found his male attorney attractive. Additionally, Defendant Quinn made sexually explicit comments about women and compared a sign that stated "Bushy Mound" to a vagina. Further, Plaintiff contends Defendant Quinn prolonged Plaintiff's transport from the Macoupin County courthouse to Centralia as a form of harassment.[4]

There is no doubt Defendant Quinn's comments were unprofessional. In fact, they were quite vulgar. While the Court wishes to make clear it does not condone Defendant Quinn's comments and conduct, his behavior does not rise to the level of cruel and unusual punishment prohibited by the Eighth Amendment. Unlike *Beal* and *Lisle*, there is no evidence of a compounding factor that crosses the boundary between unactionable harassment and unconstitutional psychological punishment.  For example, Defendant Quinn's comments were not made in front of other inmates, did not incite other inmates to harm Plaintiff, were not accompanied by a threatening act, and were isolated to a single day.  *Cf. Beal*, 803 F.3d at 358 (where the defendant repeatedly displayed his penis to the plaintiff in front of other inmates and implied the plaintiff was a homosexual, which possibly placed the plaintiff at risk of sexual assault). Additionally, Defendant Quinn's conduct does not implicate a malicious animus or psychologically punishing affect that is analogous to falsely telling an inmate his wife and children died in a car accident, he

---

[4] Defendants introduce IDOC transportation records that indicate the return trip to Centralia took less time than the trip from Centralia to the courthouse (Doc. 123-2). However, Plaintiff submits an affidavit that the trip lasted approximately 45 minutes longer (Doc. 126, p. 3). For purposes of summary judgment, the Court construes the record in the light most favorable to Plaintiff and resolves the factual dispute concerning the length of the return trip in Plaintiff's favor.  *Hansen v. Fincantieri Marine Grp., LLC*, 763 F.3d 832, 836 (7th Cir. 2014).

has incurable cancer, or he was sentenced to death. *See Beal*, 803 F.3d at 358-59; *Dobbey*, 574 F.3d at 445. Further, although Plaintiff suffers from anxiety and depression, there is no evidence Defendant Quinn used specialized knowledge of Plaintiff's mental health to deliberately target Plaintiff's vulnerabilities.[5] Defendant Quinn's comments were entirely unrelated to Plaintiff's mental health and Plaintiff does not contend that Defendant Quinn intentionally exploited his anxiety or depression. *Cf. Lisle*, 933 F.3d 705 (where the nurse assigned to the plaintiff's suicide watch made fun of the plaintiff for his failed suicide attempt and told him to "do a better job next time"). In fact, many of Defendant Quinn's comments were either directed towards other individuals or were not aimed "directly and hurtfully" at Plaintiff. *See Beal*, 803 F.3d at 358 (explaining that a series of sexually suggestive comments made to a prisoner about female teachers was not unconstitutional because the harassment "was directed, to a significant degree, at the female teachers," was not "aimed directly and hurtfully" at the plaintiff, and constituted "second-hand harassment").

Additionally, there is no evidence that Plaintiff suffered severe psychological harm as a result of the harassment or that Defendant Quinn's conduct would cause a reasonable person to fear a substantial risk of a serious injury. The test for what constitutes cruel and unusual punishment is an objective one that evaluates whether a reasonable victim would fear a substantial risk of harm; the test does not turn on "the actual fear of the victim." *Dobbey*, 574 F.3d at 446. Here, Plaintiff submits an affidavit in

---

[5] The parties dispute whether Defendant Quinn was aware that Plaintiff takes medication for anxiety and depression. Again, for purposes of summary judgment, the evidence is viewed in the light most favorable to Plaintiff and the Court assumes Defendant Quinn was aware of Plaintiff's mental health conditions.

opposition to Defendants' summary judgment motion that states Defendant Quinn's comments were "upsetting" (Doc. 126, p. 3).  Also, Plaintiff previously filed an affidavit in support of his Complaint that states the harassment made him "scared to even go on writs now," made his depression and anxiety "much worse," and made him fear for his life (Doc. 19).  However, there is no evidence that Plaintiff sought psychological care for the incident and Plaintiff does not detail the symptoms he suffered as a result of the harassment. *Cf. Beal*, 803 F.3d at 358-59 (where the plaintiff claimed "to have experienced psychological harm as a result of the incident described…that induced him to seek 'psych service' help repeatedly"). Further, Plaintiff provides no explanation as to how Defendant Quinn's conduct made him fear for his life. Plaintiff states that a retired officer at Graham Correctional Center previously placed Plaintiff in segregation and threatened to kill him (Doc. 19). But there is no connection between these allegations and Defendant Quinn or the incident in question that would induce a reasonable victim to fear a serious injury.

In the absence of physical endangerment, severe psychological harm, or another compounding factor, Defendant Quinn's harassment does not amount to an Eighth Amendment violation. *See Robinson v. Budde*, 2021 WL 1722857 (N.D. Ill. April 30, 2021) (granting summary judgment to the defendants where the plaintiff alleged he felt humiliated, had insomnia, and isolated himself in his cell for a couple of days as a result of harassment, but there was no evidence the plaintiff sought psychological care, he did not fear a physical attack, and there were no repeated incidents of abuse); *Scruggs v. Miller*, 2016 WL 495603 (N.D. Ind. Feb. 8, 2016) (finding no constitutional claim where the defendants called an inmate a racial slur and told the inmate they wanted him dead,

would have the "KKK go see his family," and would put his children's photos on child porn websites, because the harassment did not increase the risk of any future harm to the plaintiff or cause him psychological harm); *Rausch v. Bortz*, 2017 WL 6805690 (W.D. Wis. Nov. 8, 2017) (finding no constitutional claim where a prison guard told the plaintiff he probably used his hat to "wipe semen off of his celly's stomach" because the harassment was not repeated and it did not place the plaintiff at risk of assault by other inmates); *Cf. McCutcheon v. Schnicker*, 2016 WL 1059009 (S.D. Ill. March 17, 2016) (permitting an Eighth Amendment claim to proceed past summary judgment because "[a] reasonable jury could determine that the publication of the plaintiff's [sex] crimes and referring to the plaintiff as a 'child molester' and 'baby raping motherfucker' to the general prison population and staff would create fear in a reasonable victim of a substantial risk of serious injury. If the alleged comments were made in a more private setting—***such as during a vehicle transport***—the Court may have agreed that the comments were mere harassment.") (emphasis added); *Lewis v. Ross*, 2020 WL 6487525 (S.D. Ind. Nov. 3, 2020) (finding a reasonable jury could find in favor of the plaintiff on an Eighth Amendment claim where, after a guard threatened to have the plaintiff beaten and sexually assaulted, the plaintiff was stabbed and harassed by other inmates and the plaintiff went into suicide watch because he feared for his life); *Leathers v. Johnson*, 2020 WL 4819051 (S.D. Ind. Aug. 19, 2020) (denying the defendant's summary judgment motion on an Eighth Amendment claim where a guard repeatedly touched the plaintiff's "private areas" and requested oral sex from the plaintiff, which caused the plaintiff to be harassed by fellow inmates and seek mental health services).

Also, Plaintiff suggests Defendant Quinn knew Plaintiff had issues with his bowels but nevertheless intentionally prolonged the return trip, which "forced [Plaintiff] to hold [his] stool causing severe physical pain" (Doc. 126, p. 3). Plaintiff has not introduced any evidence of how Defendant Quinn knew of Plaintiff's bowel condition or any other evidence that would permit a reasonable jury to find in favor of Plaintiff on this basis. Further, the Court's order pursuant to 28 U.S.C. § 1915A, dated April 25, 2019, omits any reference to an Eighth Amendment claim based on Plaintiff's bowel condition. Plaintiff cannot amend his complaint through argument in his brief in opposition to Defendants' motion for summary judgment.  *Anderson v. Donahoe*, 699 F.3d 989, 997 (7th Cir. 2012).

In sum, as a matter of law, Defendant Quinn's conduct does not constitute the rare case where repugnant words and harassment rise to the level of unconstitutional punishment prohibited by the Eighth Amendment. For these reasons, Plaintiff's Eighth Amendment claim for cruel and unusual punishment fails as a matter of law and Defendant Quinn is entitled to summary judgment on Count 2 of the Complaint.

### B.  First Amendment Claim For Retaliation (Count 3)

To prevail on a First Amendment retaliation claim, a plaintiff must establish (1) he engaged in protected First Amendment activity; (2) an adverse action was taken against him; and (3) the protected conduct was at least a motivating factor of the adverse action. *Holleman v. Zatecky*, 951 F.3d 873, 878 (7th Cir. 2020). If the plaintiff establishes these elements, the burden shifts to the defendants to show that the adverse action would have

occurred even in the absence of the protected conduct. *Greene v. Doruff*, 660 F.3d 975, 979 (7th Cir. 2011). Once the defendant produces evidence that that the same decision would have been made in the absence of the protected conduct, the burden shifts back to the plaintiff to demonstrate the defendant's proffered reason was pretextual and that the real reason was retaliatory animus, *i.e.*, the defendant's reason is a lie. *Thayer v. Chiczewski*, 705 F.3d 237, 252 (7th Cir. 2012).

Here, Plaintiff claims Defendants transferred him to a different correctional facility as retaliation for Plaintiff filing a PREA complaint. Defendants concede that Plaintiff engaged in protected First Amendment activity by filing the PREA complaint (Doc. 123, p. 13). Further, Defendants do not contest that adverse action was taken against Plaintiff (*See* Doc. 123). However, Defendants argue Plaintiff cannot establish that the PREA complaint was at least a motivating factor in Plaintiff's transfer.

Defendants set forth evidence that two mental health professionals at SWICC completed staff familiarity forms and an incident report pertaining to their familiarity with Plaintiff and his family members (Doc. 123-8) (Doc. 123-9). Both staff members stated they provided mental health treatment to Plaintiff's family members, and one of the staff members stated the conflict would prohibit her from having direct contact with Plaintiff (*Id.*). Defendant Vitale submits an affidavit that states Plaintiff was transferred from SWICC solely because of the staff familiarity issues and that, although not a written IDOC rule or policy, it is standard operating procedure for offenders to be transferred to another facility when staff familiarity may affect their job performance (Doc. 129). Also, Defendants contend Plaintiff's PREA complaint could not have been a motivating factor

in the decision to transfer Plaintiff, because the investigation of the complaint was not completed until after the transfer was initiated.

On the other hand, Plaintiff sets forth his own affidavit in which he states that a staff member at SWICC informed him that Defendant Vitale was transferring Plaintiff to another facility because Plaintiff filed a PREA complaint. The affidavit states:

> The Mental Health women who is African American, told me a day or two before i [sic] was transferred that I was being transferred by Warden Vitale because I ran my mouth and he did not want someone reporting PREA against IDOC officials at his prison. She said when I get to Sheridan Correctional Center to keep my mouth shut and I would be fine.

(Doc. 126, p. 3).

Viewing the record in the light most favorable to Plaintiff, a rational trier of fact could find that Plaintiff's PREA complaint was at least a motivating factor in Defendants' decision to transfer Plaintiff to another facility and that Defendants' proffered reason for Plaintiff's transfer was pretextual. The fact that the investigation into Plaintiff's PREA complaint was not completed until after Plaintiff's transfer was initiated is immaterial; the question is whether Plaintiff's *filing* of the complaint was a motivating factor. Thus, the parties' competing evidence raises issues about credibility and intent that cannot be resolved on summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."). "[S]ummary judgment is inappropriate when affidavits require credibility determinations," and "where the underlying issue is one of motivation, intent, or some other subjective fact." *Santiago v. Lane*, 894 F.2d 218, 224 (7th Cir. 1990).

However, although Defendants did not address whether Plaintiff's transfer constitutes an "adverse action," it appears obvious under Seventh Circuit precedent that the facts of this case, as alleged and if true, do not satisfy this element of a First Amendment retaliation claim. *See Holleman v. Zatecky*, 951 F.3d 873, 878 (7th Cir. 2020). In *Holleman*, the Seventh Circuit held, "[T]he disruption inherent in a transfer to a different facility does not by itself make the transfer adverse. Without some additional aggravating factor, such as relocation to a much more restrictive or dangerous environment, a transfer is not likely to deter a person of ordinary firmness from continuing to engage in protected conduct." *Id.* Plaintiff has not alleged any aggravating factors associated with his transfer that would deter an inmate of ordinary firmness from engaging in protected conduct. Thus, the Court is inclined to grant summary judgment to Defendants on Count 3 pursuant to Rule 56(f).[6] However, the Court defers its ruling to afford Plaintiff an opportunity to respond and explain why summary judgment is inappropriate.

### C. Qualified Immunity

Alternatively, Defendants argue they are entitled to summary judgment because qualified immunity protects them from liability. This Court has already concluded that Plaintiff's claim for cruel and unusual punishment fails as a matter of law.  Thus, the

---

[6] Under Federal Rule of Civil Procedure 56(f), the Court may grant summary judgment independent of a motion provided the parties are given notice and a reasonable time to respond. FED. R. CIV. P. 56(f).

remaining issue is whether Defendants are entitled to summary judgment on Plaintiff's

First Amendment retaliation claim on the grounds of qualified immunity.

"Qualified immunity attaches when an official's conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have

known." *White v. Pauly*, 137 S. Ct. 548, 551 (2017).  The test for qualified immunity has

two prongs: (1) whether the facts, taken in the light most favorable to the party asserting

the injury, demonstrate that the official's conduct violated a constitutional right, and (2)

whether the right at issue was clearly established at the time of the alleged misconduct.

*Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

As set out above, Plaintiff may be able to set forth a genuine issue of material fact

concerning his First Amendment retaliation claim to permit the claim to proceed past

summary judgment.  Further, Plaintiff's First Amendment Right was clearly established

at the time of Defendants' alleged misconduct. "[F]ederal courts have long recognized a

prisoner's right to seek administrative or judicial remedy of conditions of confinement,

as well as the right to be free from retaliation for exercising this right." *Babcock v. White*,

102 F.3d 267, 276 (7th Cir. 1996).  Thus, Defendants are not entitled to summary judgment

on Plaintiff's First Amendment retaliation claim on the basis of qualified immunity.

## CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment filed by Defendants

is **GRANTED** in part as to Plaintiff's Eighth Amendment claim against Defendant Levi

Quinn in Count 2. Judgment will be entered in his favor at the conclusion of the case. The

Court **DEFERS RULING** in part as to Plaintiff's First Amendment claim against Defendant Ronald Vitale in Count 3. The Court finds that based on the record as it currently stands, Defendant Vitale is entitled to summary judgment on Count 3. However, Plaintiff shall have an opportunity to respond. Such response is due within fourteen days—on or before March 15, 2022—and must explain why summary judgment should not be awarded to Defendant Vitale and present competent evidence in support of his argument that demonstrates a genuine issue of material fact. **If Plaintiff fails to file a brief, summary judgment will be summarily granted for Defendant Vitale as to Count 3.**

IT IS SO ORDERED.

DATED: March 1, 2022

<u>s/ Mark A. Beatty</u>
**MARK A. BEATTY**
**United States Magistrate Judge**